UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DESHAN WATSON,

                            Petitioner,

        v.

MAGGIE MILLER-STOUT, ELDON
VAIL, and ROBERT McKENNA,

                            Respondents.

No. C11-5013 RBL/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  July 15, 2011**

This case has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.  Petitioner Deshan Watson filed a 28 U.S.C. § 2254 habeas corpus petition challenging his 2004 convictions.  ECF No. 7. Respondents filed an Answer (ECF No. 18), and submitted relevant portions of the state court record.  ECF No. 19.  Petitioner filed a response.  ECF No. 22.  Petitioner also filed a motion to stay this habeas proceeding so that he can return to state court to exhaust his claim of cumulative error.  ECF No. 21.

Having carefully considered the parties' filings and relevant record, the undersigned recommends that the petition be denied and this action dismissed with prejudice.  Petitioner's motion to stay should also be denied as his claim of cumulative error is unexhausted and is procedurally barred.

## BACKGROUND

Petitioner Deshan Akeem Watson is in the custody of the Washington Department of Corrections pursuant to a 2004 conviction by jury verdict of one count of Murder in the First

REPORT AND RECOMMENDATION - 1

Degree (Count I) and one count of Assault in the Second Degree (Count II).   ECF No. 19, Exh.

1 (Judgment and Sentence, *State v. Watson*, Clark County Superior Court Cause No. 04-1-

01215-5).  The trial court sentenced Mr. Watson to 448 months confinement on Count I

(including a 60 month firearm enhancement) and 65 months confinement on Count II (including

a 36 month firearm enhancement).  The trial court ran the sentences on Counts I and II

concurrent with the enhancements running consecutively so the total confinement ordered was

484 months.  *Id.* at 5.

**A.**    **Factual Background**

The Washington Court of Appeals summarized the facts in Mr. Watson's case, in part, as

follows:

### FACTS

#### I. Murder and Assault

Matt Halligan, Andrew Blaine[1], Joshua Blaine and Ann Westelin were
housemates.  Blaine woke up one morning, heard talking outside his room, and
opened his bedroom door.  A person in a black mask entered his room and struck
him with a gun, and Blaine fell to the floor.  The attacker left Blaine's room and
went to Halligan's room, where Blaine saw Halligan wrestling with a second
black-ski-masked person.

Blaine closed his bedroom door, escaped through his window, and later
returned to the house, by which time the two intruders had left.  Blaine saw
Halligan lying on his bed with a chest puncture wound, "breathing for breath."
Blaine used a cell phone to call 9-1-1.  Halligan was shot twice, in his chest and
forearm. He died as a result of the gunshot wound to his chest.

Blaine believed his attacker was the same height as he was, about six feet
one-inch tall.  He thought both attackers were black because (1) his attacker's
facial features blended with the black mask he was wearing; (2) he had seen dark
colored skin on the necks of both men, beneath their ski masks; and (3) Halligan's
attacker had his hair in corn rows.

## B. Investigation

At Halligan's house, police seized a black stocking cap from Halligan's bedroom, a black neoprene ski mask from Halligan's dining room, shell casings, a bullet fragment, an expended bullet from the bathroom wall, a .380 caliber clip containing four rounds in Halligan's bedroom, and two rolls of duct tape from Halligan's bedroom floor. They also collected blood samples from the bed and walls of Halligan's bedroom and from the black stocking cap.

Several weeks later, Brandon Lockwood contacted police with information about Halligan's murder. According to Lockwood, he, his friend Ray Suggs, and Suggs' friend Deshan Watson had been sitting together on a bus a day or two before the murder. Suggs and Watson talked about getting some ski masks and guns so they could go to Halligan's house and steal his marijuana. Watson said he would supply the gun, and he and Suggs would wear ski masks. At the time of this conversation, both Watson and Suggs wore "corn row" hair braids. Lockwood described Suggs as a black man about five feet five inches tall.

Clark County Deputy Sheriff Kevin Harper assisted Detective Eric O'Dell in interviewing witnesses and suspects, including Watson. After Harper read Watson his *Miranda*[2] rights, which Watson indicated he understood, Watson stated that he did not know Halligan, had never seen him before, and had nothing to do with his murder.

. . . .

## E. Verdicts

The jury found Watson guilty of first degree murder of Halligan, Count I, and second degree assault of Blaine, Count 2. It also answered "yes" on the special verdict forms, finding that Watson was armed or in possession of a firearm while committing both crimes.

[1] [Court's Footnote]: All future references to "Blaine" are to Andrew Blaine.]

[2] [Court's Footnote]: *Miranda v. Arizona,* 384 U.S. 436, 473-74, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966)

ECF No. 19, Exh. 2, pp. 1-3, 7 (Unpublished Opinion, *State v. Watson*, Washington Court of Appeals Cause No. 30589-5-II).

REPORT AND RECOMMENDATION - 3

**B.    Procedural History**

    **(1)    Direct Appeal**

Through counsel Mr. Watson filed an appeal of his conviction, raising the following assignments of error:

1. The trial court denied the defendant his right to speedy trial under CrR 3.3 when it granted defense counsel's motion to continue the trial date over defendant's objection.

2. The trial court violated the defendant's right to a fair trial under Washington Constitution, Article 1, § 3 and United States Constitution, Fourteenth Amendment, when it allowed the state to elicit evidence that a police officer believed the defendant lied during his statement to the police.

3. The trial court violated the defendant's right to confront witnesses under Washington Constitution, Article 1, § 22 and United States Constitution, Sixth Amendment when it refused to allow the defense to examine a critical state's witness concerning his prejudice and bias.

4. Trial counsel's failure to object when the state improperly impeached a key defense witness with evidence of inadmissible juvenile convictions denied the defendant his right to effective assistance of counsel under Washington Constitution, Article 1, § 22 and United States Constitution, Sixth Amendment.

5. The trial court denied the defendant his right to a fair trial under Washington Constitution, Article 1, § 3, and United States Constitution, Fourteenth Amendment, when it refused to allow the defense to elicit evidence of another perpetrator.

6. The cumulative effect of the errors in this case denied the defendant a fair trial under Washington Constitution, Article 1, § 3 and United States Constitution, Fourteenth Amendment.

7. The trial court violated the defendant's right to due process under Washington Constitution, Article 1, § 3 and United States Constitution, Fourteenth Amendment when it entered judgment for a second degree assault and imposed firearms enhancements in this case because the state failed to prove the assault or the enhancements beyond a reasonable doubt.

ECF No. 19, Exh. 3, pp. 1-2.

REPORT AND RECOMMENDATION - 4

The State filed a brief in opposition.   ECF No. 19, Exh. 4.   The Washington Court of Appeals affirmed the conviction.   *Id.*, Exh. 2, p. 20.   Mr. Watson filed a petition for review, raising the following issues for review:

1.      Was Mr. Watson's constitutional right to present a defense violated because the court erroneously excluded evidence that was relevant and necessary to his defense, therefore infringing upon Mr. Watson's 5th, 6th, and 14th Amendments to the U.S. Constitution? [trial court excluded other suspect evidence re Ms. Stuckey and her boyfriend]

2.      Was Defendant's right to speedy trial under CrR 3.3 and Sixth Amendment violated when trial court granted defense counsel's motion to continue the trial date over Defendant's objection?

3.      Did trial court violate the Defendant's right to a fair trial under Washington Constitution, Article 1 and 2, and under United States Constitution, Fourteenth Amendment, when it allowed the State to elicit evidence that a police officer believed the Defendant lied during his statement to the police?

ECF No. 19, Exh. 5, p. 1.

The Washington Supreme Court denied review.  *Id.*, Exh. 6.  The Washington Court of Appeals issued its mandate on December 12, 2007.  *Id.*, Exh. 7.

**(2)     Personal Restraint Petition**

On or about October 10, 2008, Mr. Watson filed a personal restraint petition and opening brief with the Court of Appeals, in which the following grounds for review were raised:

A.      Petitioner was deprived of his Sixth and Fourteenth Amendment Rights to Effective Assistance of Appellate Counsel. [6 sub-claims]

B.      The Combination of the First Degree Murder Based on the Predicate of First Degree Burglary, Second Degree Assault, with a Deadly Weapon and Deadly Weapon Enhancements on Each Violate Double Jeopardy.

C.      The Evidence Used to Obtain Petitioner's Conviction is Insufficient Beyond a Reasonable Doubt.

[D]     ***Cumulative Error Doctrine.

REPORT AND RECOMMENDATION - 5

ECF No. 19, Exh. 8, pp. i-ii and 48.

The State filed a brief in opposition. *Id.*, Exh. 9. Mr. Watson filed a reply brief. *Id.*, Exh. 10. The Washington Court of Appeals dismissed the personal restraint petition as frivolous. *Id.*, Exh. 11.

Mr. Watson filed a motion for discretionary review with the Washington Supreme Court. *Id.*, Exh. 12. The motion contained the following summarized issues for review:

1.      Whether Petitioner was Deprived Effective Assistance of Appellate
        Counsel. [6 sub-claims]

2.      Whether Petitioner's Conviction and Sentencing Violates Double
        Jeopardy. [Raised as appellate counsel's failure to raise double jeopardy
        on firearm enhancements]

ECF No. 19, Exh. 12, p. 1. The consideration of the motion for discretionary review was stayed pending the court's decision in *State v. Kelley*, Washington Supreme Court Cause No. 82111-9, and *State v. Aguirre,* Washington Supreme Court Cause No. 82226-3. *Id.*, Exh. 13. The stay was subsequently lifted and the Supreme Court Commissioner denied review. *Id.*, Exh. 14.

Mr. Watson filed a motion to modify the court's ruling denying his motion for discretionary review. *Id.*, Exh. 15. That motion was denied. *Id.*, Exh. 16. The Washington Court of Appeals issued its Certificate of Finality on December 22, 2010. *Id.*, Exh. 17.

## ISSUES FOR FEDERAL HABEAS REVIEW

Mr. Watson states three separate issues for federal habeas review, summarized as follows:

1)      Petitioner was deprived effective assistance of appellate counsel:

        a)      Appellate counsel failed to obtain full verbatim report of
                proceedings.

REPORT AND RECOMMENDATION - 6

b)     Appellate counsel failed to raise the ineffectiveness of trial counsel when he failed to properly cross-examine Lockwood.

c)     Appellate counsel failed to raise the ineffectiveness of trial counsel when he failed to call witnesses to offer other suspect information.

d)     Appellate counsel failed to raise the trial court's limitation of cross-examination of the state's expert witness.

e)     Appellate counsel failed to raise a viable double jeopardy claim.

2)     Petitioner's conviction is not supported by sufficient evidence of guilty beyond a reasonable doubt.

3)     Cumulative error deprived Petitioner of due process of law and a fundamentally fair trial.

*See* ECF No. 7, pp. 14, 39.

## EVIDENTIARY HEARING

Evidentiary hearings are not usually necessary in a habeas case.  If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:  (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. § 2254(e)(2) (1996).

If the record refutes a petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.  *Schiro v. Landrigan,* 550 U.S. 465, 474, 127 S. Ct. 1933 (2007).   "[A]n evidentiary hearing is not required on issues that can be

REPORT AND RECOMMENDATION - 7

resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (1998). Mr. Watson's claims raise purely issues of law and not factual disputes and therefore, an evidentiary hearing resolving questions of fact is not necessary for the Court to adjudicate his claims. Additionally, the Court's review of the record in this case confirms that he is not entitled to habeas relief. *See Landrigan*, 550 U.S. at 474. Therefore, Mr. Watson is not entitled to an evidentiary hearing on any of his habeas claims.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1983). Federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 110 S. Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S. Ct. 871, 79 L.Ed.2d 29 (1984).

A federal court cannot grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

State court decisions must be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and

"nevertheless arrives at a result different from that precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06).

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). However, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

**A.    First Habeas Claim – Ineffective Assistance of Appellate Counsel**

Under the Due Process Clause of the Fourteenth Amendment, criminal defendants are entitled to the assistance of counsel on criminal appeals as of right. *Douglas v. California*, 372 U.S. 353 (1963). The due process right to appellate counsel also includes the right to the

effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985). Claims of ineffective assistance of counsel on appeal are reviewed under a deferential standard similar to that established for trial counsel ineffectiveness in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527, 535 (1986). Under that standard, petitioners challenging their appellate counsel's performance must demonstrate (1) counsel's performance was unreasonable, which in the appellate context requires a showing that counsel acted unreasonably in failing to discover and brief a meritorious issue, and (2) there is a reasonable probability that, but for counsel's failure to raise the issue, the petitioner would have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. at 285-86; *see also Wildman v. Johnson*, 261 F.3d 832, 841-42 (9th Cir. 2001); *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992), *cert. denied*, 508 U.S. 920 (1993); *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989).

The two prongs partially overlap in evaluating appellate counsel's performance because it may be reasonable under the circumstances not to raise a particular nonfrivolous issue on appeal and because that particular issue may also not have been likely to result in a reversal of the defendant's conviction. *Miller,* 882 F.2d at 1434. The exercise of professional judgment in framing appellate issues makes it difficult to demonstrate that counsel's omission of a particular argument was deficient performance. *Smith v. Robbins*, 528 U.S. at 288. Indeed, the process of winnowing out weaker arguments on appeal and focusing on those issues more likely to succeed is the hallmark of effective advocacy. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). "[A] lawyer who throws in every arguable point – 'just in case' -- is likely to serve her client less effectively than one who concentrates solely on the strong arguments." *Miller*, 882 F.2d at 1434.

Therefore, appellate counsel has no constitutional obligation to raise every non-frivolous, colorable issue on appeal. *Jones v. Barnes*, 463 U.S. at 751-54.

Absent contrary evidence, it is assumed that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy. *United States v. Brown*, 528 F. 3d 1030 1033 (8th Cir. 2008). Failure to attack trial counsel is not ineffectiveness where trial counsel's performance did not fall below the *Strickland* standard. *Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991). It is not ineffective counsel from refraining from appealing a correct ruling. *People of the Territory of Guam v. Santos,* 741 F.2d 1167, 1169 (9th Cir. 1984). Also, if there is no prejudice from trial error, by extension there can be no prejudice from an appellate error predicated on the same issue. *Garcia v. Quaterman*, 454 F.3d 441, 450 (5th cir. 2006).

**(1)    Failure to Order Full Verbatim Report of Proceedings**

Mr. Watson argues that appellate counsel was ineffective for failing to order the pre-trial hearings, voir dire, oral reading of the instructions to the jury, and sentencing. ECF No. 7, p. 22. Because of this failure, Mr. Watson argues that he was deprived of the ability to identify and present further issues on direct appeal in a statement of additional grounds for review. *Id.*, p. 25. The Washington Court of Appeals rejected this claim:

> First, Watson argues that his attorney did not obtain a complete record on direct appeal. He seems to presume that the choice not to certify portions of the record means that his attorney did not review them, but attorneys may review portions of the record before deciding whether to certify them for review. The records that Watson identifies are: opening statements, voir dire, the oral reading of jury instructions, pre-trial rulings by Judge Rulli, and sentencing. We note that the report of proceedings provided at public expense rarely includes voir dire or opening statements. RAP 9.2(b). More importantly, however, Watson does not identify any issues within these records that give rise to a claim of ineffective assistance of counsel. Rather, he argues that his attorney was required to give the records to him (not the court) because he wanted them in order to prepare his pro se Statement of Additional Grounds of Relief. RAP 10.10. Appellate counsel

have no obligation to facilitate a SAG. If Watson wanted more records than he had, he was required to purchase them himself. This argument fails.

ECF No. 19, Exh. 11, p. 2.

The Court need not evaluate whether the failure of appellate counsel to order the portions of the record identified by Mr. Watson fell below an objective standard of reasonableness "because even if it did, such inadequate performance would not have been prejudicial. To demonstrate prejudice, the defendant has the burden of proving that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Laboa v. Calderon,* 224 F.3d 972, 981 (9th Cir. 2000) (*citing Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

Mr. Watson does not explain the probative value of the missing transcripts, how the failure to obtain the transcripts undermined the proper functioning of the adversarial process, or how the failure to obtain the transcripts deprived him of a fair hearing. Mr. Watson simply presumes that he was deprived of the ability to identify and present further issues on appeal even though he was present at all of the non-transcribed hearings or events. His conclusory allegations are insufficient to support a claim for habeas relief. The Court is also unaware of any legal requirement that appellate counsel provide portions of the record to a defendant so that the defendant may file additional grounds for relief on appeal.

The Washington Court of Appeals' denial of this claim was not contrary to or an unreasonable application of clearly established federal law. Accordingly, the undersigned recommends that this claim be denied.

REPORT AND RECOMMENDATION - 12

### (2)     Failure To Cross-Examine Lockwood Regarding Reward

Mr. Watson alleges that appellate counsel was ineffective for not raising trial counsel's ineffectiveness in failing to cross-examine Lockwood regarding his knowledge of a reward offered by police. ECF No. 7, pp. 26-27. Mr. Watson states that two weeks after Matthew Halligans' death, the Clark County Sheriff's Office put out a Media Release offering a reward. The reward was also reported in a March 1 newspaper article. *Id.*, p. 27.

The Washington Court of Appeals' denied the claim:

> Next, Watson argues that his appellate attorney should have raised the issue that his trial counsel failed to perform an adequate investigation into whether a State's witness, Brandon Lockwood, was motivated to lie in order to collect a reward. Such an argument would require counsel to rely on matters outside of the trial court record regarding the pre-trial investigation and whether Lockwood actually knew about the reward, but direct appeal is limited to matters in the trial court record. RAP 9.1 Appellate counsel did not perform deficiently on this ground.

ECF No. 19, Exh. 11, p. 3.

In Washington, competency of counsel is determined based upon a review of the entire record below. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Courts engage in a strong presumption that counsel's representation was effective. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). Where the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record. *McFarland*, 127 Wn.2d at 335; *State v. Crane*, 116 Wn.2d 315, 335, 804 P.2d 10 (1991). The Washington Supreme Court explains that "[i]f a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal." *Id.* The court also emphasized that "remanding for expansion of the record is not an appropriate remedy." *Id.* at 338.

REPORT AND RECOMMENDATION - 13

Thus, Mr. Watson's remedy was to file a personal restraint petition where he could set forth his contention that he was prejudiced because Lockwood had a motivation to lie (*i.e.,* a monetary award) and that this motivation was not presented at trial. The *McFarland* court acknowledged that this rule puts the defendant in the difficult position of having to demonstrate prejudice based on the record before the trial court, even though the record is silent on the issue precisely because counsel did not raise it. *McFarland,* 127 Wn.2d at 334. However, under Washington Rules of Appellate Procedure, Mr. Watson's appellate counsel could not raise an issue of trial counsel's ineffectiveness based on matters that can be found only outside the trial court record.

Similarly, federal courts generally do not consider claims of ineffectiveness of trial counsel on direct appeal because such claims usually require the development of facts outside the record to which a direct appeal is limited. *See, e.g., U.S. v. Jeronimo*, 398 F.3d 1149, 1155-56 (9th Cir.2005) ("[A]s a general rule, we do not review challenges to the effectiveness of defense counsel on direct appeal .... The rationale for our general rule ... is that ineffectiveness of counsel claims 'usually ... cannot be advanced without the development of facts outside the original record.' ") (citations omitted). *See also, United States v. Laughlin,* 933 F.2d 786, 788-89 (9th Cir. 1991) (declining to address ineffective assistance claim where record contained "little more than generalized assertions of incompetency", "former defense counsel …had no opportunity to explain his actions", and defendant had not "established any foundation for demonstrating that the alleged errors actually prejudiced the outcome of the hearing.")

The Washington Court of Appeals' denial of this claim was not contrary to or an unreasonable application of clearly established federal law. Accordingly, the undersigned recommends that this claim be denied.

REPORT AND RECOMMENDATION - 14

**(3)    Failure To Raise Trial Counsel's Ineffectiveness In Failing To Call Witnesses Who Could Offer Other Suspect Evidence**

Mr. Watson argues that trial counsel was ineffective for failure to investigate evidence obtained pre-trial that the witnesses identified the assailants as one black person and one white person, rather than two black men as identified to the jury. Mr. Watson points to a "note written by Expert Vaughan, detective Harper, during a phone consultation" on February 24, 2004. ECF No. 7, p. 31, Exh. 5. Mr. Watson argues that his trial counsel failed to cross-examine Vaughn or Detective Harper during their cross-examinations. Mr. Watson also argues that an individual named Justin Askren who was interviewed by the detectives had information that pointed to another suspect. *Id.*, p. 31.

In rejecting this claim, the Washington Court of Appeals held:

> Fourth, Watson argues that his appellate counsel should have argued that trial counsel improperly failed to call witnesses who had exonerating information. Again, counsel on direct review could not raise this claim because it relies on matters outside the trial court record. *See* RAP 9.1-9.2. This was not deficient performance.

ECF No. 19, Exh. 11, p. 3.

As with Mr. Watson's claim regarding the cross-examination of Mr. Lockwood discussed above, trial counsel was limited to the record on appeal on direct review. Therefore, this claim would have required trial counsel, and subsequently appellate counsel in evaluating trial counsel's performance, to look to matters outside the trial court record. Pursuant to Washington rules of appellate procedure, such a claim could not have been raised. For the same reasons set forth above, the undersigned finds that the Washington Court of Appeals' denial of this claim is not contrary to or an unreasonable application of clearly established federal law. Accordingly, this claim should be denied.

REPORT AND RECOMMENDATION - 15

**(4)    Failure To Raise The Trial Court's Limitation Of Defense Counsel's Cross-Examination Of A Critical State Expert Witness On His Employment History In Oregon**

Mr. Watson next argues that his appellate counsel should have raised the trial court's limitation of his trial counsel's ability to cross-examine the State's DNA expert Charles Vaughan as to his prior employment history in Oregon and with regard to allegations contained in a Seattle Post Intelligencer (PI) article that his DNA work in two other criminal cases was flawed, that he failed an annual proficiency exam, and that he had been demoted for failing to discipline an employee accused of falsifying test results. ECF No. 7, p. 32.

The State's motion in limine moved to limit the facts reported in the PI article. ECF No. 7, Exh. 7, p. 2. In part, the PI article criticized Vaughan's forensic testing and testimony regarding blood and gunpowder evidence in two criminal cases in Oregon, where the defendants Boots and Proctor were convicted. They were released after investigation into a fingerprint found at the crime scene led to a third individual, who confessed before killing himself. Subsequently, Boots and Proctor filed a federal civil rights lawsuit which named Vaughan as one of the defendants. According to the PI article, the judge ruled "there was insufficient evidence to prove the forensic scientist had 'manufactured evidence or otherwise acted with deliberate indifference' -- the standard which must be made in civil cases." ECF No. 7, Exh. 7, p. 12.

In its motion in limine, the State alleged that there was an ongoing debate about whether Vaughan's work in the Boots and Procter case was flawed. *Id.* at 2. The State argued that to allow admission of evidence that charges were dismissed against defendants, who were convicted in part based on Mr. Vaughan's testimony, would be misleading and not relevant. The State alleged that if such evidence was admitted, the State would be required to prove that Vaughan performed his tests correctly in those cases, a separate trial within the trial at issue. *Id.*

The State also argued that the evidence did not meet the requirements of 404(b) to demonstrate

prior bad acts for motive or plan or absence of mistake. *Id.*

The record does not contain a verbatim transcript of the trial court's ruling on the motion

in limine. However, a summation of the ruling is contained in a Clark County Superior Court

"In Court Record" for February 3, 2005, which is attached to Mr. Watson's habeas petition:

> 3:47 … Judge advises counsel that the <u>Proctor</u> and <u>Boots</u> case is to be kept out
> of cross examination with regard to proficiency and prior
> disciplinary actions
> counsels argue futher re: above issue
> court orders that any questioning re: above to be done via an offer of
> proof, but witness interviews to be conducted prior to trial
> plaintiff's counsel to make witness available to defense prior to trial

ECF No. 7, Exh. 8, p. 17.

In rejecting this claim, the Washington Court of Appeals stated:

> Fifth, Watson argues that his appellate counsel should have challenged a
> motion in limine that prohibited examination of a forensic expert, Charles
> Vaughan, on allegations against him contained in a Seattle Post-Intelligencer
> newspaper article. The article alleges that Vaughan made mistakes in two other
> criminal investigations. Reviewing the motion in limine, it seems extremely
> unlikely that appellate counsel could prevail had he made such an argument
> because the trial court has wide discretion to exclude evidence under ER 404(b)
> and Watson's trial counsel remained free to cross-examine Vaughan about the
> reliability of his case, which was adequate to preserve his right to impeach and
> cross-examine against him. Watson has not demonstrated prejudice for failing to
> raise this claim.

ECF No. 19, Exh. 11, pp. 3-4.

While defendants have a right under the Confrontation Clause of the Sixth Amendment to

confront witnesses who testify against them, trial judges retain wide latitude to impose

reasonable limits on such cross-examination based on concerns about, among other things,

harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that his

repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

REPORT AND RECOMMENDATION - 17

"The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.Ed 15 (1985)(per curiam)(emphasis in original). In order to show a constitutional violation, petitioner must show that the trial judge (1) restricted cross-examination in an area of critical importance; and (2) the denial of cross-examination was prejudicial. *Van Arsdall,* 475 U.S. at 681-84.

Mr. Watson contends that Mr. Vaughan was the State's "primary witness" against him and the "only witness who linked petitioner to the crime through DNA testing." ECF No. 7, p. 33. However, the Court's review of the record reveals that Mr. Vaughan's involvement in the case involved determining whether hairs on a black stocking hat found at the scene of the crime were suitable for further DNA testing.

The record reflects that when Will Dean, a forensic scientist with Washington State Patrol Crime Laboratory, first examined the black hat, he noticed that the hat contained hairs. He sent the hat to Chris Hamburg and Chuck Vaughan, who worked in the trace section of the crime laboratory, to determine whether any of the hairs were suitable for DNA testing. ECF No. 19, Exh. 18 (Vol. IX-A, p. 493). Mr. Vaughan testified that Chris Hamburg performed all the testing on the black hat and that Mr. Vaughan checked Mr. Hamburg's results and co-signed the report. ECF No. 19, Exh. 18 (Vol. VIII-B, pp. 356, 365). On cross-examination, Mr. Watson's counsel elicited testimony from Mr. Vaughan that there were probably three or four different hairs in the hat and there was no way to tell who wore that particular hat "first or last or in between." *Id.*, p. 373.

Based on the foregoing, the Court finds that the trial court did not restrict cross-examination of Mr. Vaughan in an area of critical importance, nor was the denial of such cross-

examination prejudicial. As noted by the Washington Court of Appeal, Mr. Watson was not limited in his ability to cross-examine Mr. Vaughan about the reliability of his investigation of Mr. Watsons' case. The Washington Court Appeals' denial of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of facts. Thus, this claim should be denied.

### (4)    Failure to Raise A Double Jeopardy Claim

Mr. Watson claims that the "combination of the First Degree Murder based on the predicate of First Degree Burglary, Second Degree Assault, with a deadly weapon and deadly weapon enhancements on each violate Double Jeopardy." ECF No. 7, p. 39. Mr. Watson argues that the result is multiple punishments for the same offense because each crime contains, as an element, the requirement of being armed with a deadly weapon. ECF No. 7, pp. 41-42. It is Mr. Watson's contention that his appellate lawyer provided him with ineffective assistance of counsel when he failed to raise this issue. *Id.*, p. 47.

Mr. Watson acknowledges that the Washington courts have rejected similar double jeopardy claims on the basis that the deadly weapon enhancement statute is not a crime or element, but merely an enhancement of the penalty. ECF No. 7, p. 44. However, he argues that after the Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004), this rejection of a double jeopardy claim is not valid and any fact that increases the maximum penalty must be proven to a jury beyond a reasonable doubt. *Id.*

The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend V. The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for

REPORT AND RECOMMENDATION - 19

the same offense after conviction, a second prosecution for the same offense after acquittal, and multiple punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (*citing North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)).

Where multiple punishments are imposed in a single criminal trial, the role of the Double Jeopardy Clause "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (*citing Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); and *Ex parte Lange*, 18 Wall. 163, 21 L.Ed. 872 (1874)). *See also, Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").

There is no support in Washington state law for Mr. Watson's claim that the state deadly weapon enhancement statute violates double jeopardy when used for the sentencing of a crime predicated on the possession of a firearm. The Washington Court of Appeals denied Mr. Watson's double jeopardy claim with the following explanation:

> Last, Watson argues that his appellate counsel should have argued that his convictions for firearm enhancements and his two underlying offenses, both predicated on firearm enhancements, violate double jeopardy. However, "[i]t is well settled that sentence enhancements for offenses committed with weapons do not violate double jeopardy even where the use of a weapon is an element of the crime." *State v. Nguyen*, 134 Wn. App. 863, 866 (2006). Thus, such an argument would be frivolous on appeal and counsel was not ineffective for declining to raise it. Watson has not demonstrated ineffective assistance of counsel on any of the six grounds he has raised.

ECF No. 19, Exh. 11, p. 4.

REPORT AND RECOMMENDATION - 20

In *State v. Nguyen,* the Washington Court of Appeals explained that the Washington legislature clearly intended that the mandatory firearm enhancement result in longer sentences when firearms are used to commit crimes. *Id.*, 1118. The *Nguyen* Court also specifically rejected the argument that Washington precedent as to the imposition of firearms enhancements must be reconsidered in light of *Blakely*. "…*Blakely* does not implicate double jeopardy, but rather involves the procedure required by the Sixth Amendment for finding the facts authorizing the sentence. A jury found Nguyen guilty on each count, and entered a special verdict finding that Nguyen or an accomplice was armed with a firearm at the time of the crimes." *Id.*, p. 119. Thus, the procedure complied fully with *Blakely*. *Id.*

Mr. Watson fails to establish in these proceedings that the imposition of multiple firearms enhancements was contrary to legislative intent. The jury in Mr. Watson's case found him guilty of first degree murder of Halligan, and second degree assault of Blaine. It also answered "yes" on the special verdict forms, finding that Watson was armed or in possession of a firearm while committing both crimes. ECF No. 19, Exh. 2, p. 7. In light of established Washington law contrary to Mr. Watson's position, it is reasonable that appellate counsel refrained from raising a meritless issue on appeal. An appellate attorney is not ineffective for failing to raise claims which do not have a reasonable probability of succeeding or which offer only a remote chance of securing a reversal. *Miller v. Keeney,* 882 F.2d 1428, 1434 (9th Cir. 1989).

The Washington Court of Appeals' conclusion was neither contrary to, nor did it constitute an unreasonable application of, federal law as determined by the United States Supreme Court. Accordingly, Mr. Watson's claim on this issue should be denied.

**B. Second Habeas Claim – Insufficient Evidence**

Mr. Watson contends that the entirety of the substantive evidence relied on by the State consisted of Lockwood's testimony as to statements made by Mr. Watson and Suggs and that absent Lockwood's testimony, there was no direct evidence to establish Mr. Watson's guilt beyond a reasonable doubt. ECF No. 7, p. 49. Mr. Watson argues that both he and Suggs disputed Lockwood's testimony that they were on a bus discussing a robbery plan, Lockwood may have been motivated by financial gain, and the DNA evidence linking Mr. Watson to a mask found at the crime scene was inconclusive. *Id.*

When evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the Court itself believes the evidence establishes guilt. "Instead, the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Court must "view the record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.), *cert. denied*, 489 U.S. 1077 (1990). The Court's review is limited to "record evidence." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Review is sharply limited, and the Court owes great deference to the trier of fact. *Wright v. West*, 505 U.S. 277, 296 (1992). The jury is entitled to believe the State's evidence and disbelieve the defense's evidence. *Id.*

> [T]he prosecution need not affirmatively "rule out every hypothesis except that of guilt. . . . *and that a reviewing court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution*."

*Id.* at 296-97 (citations omitted) (emphasis added). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume - even if it does not

REPORT AND RECOMMENDATION - 22

affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326; *see also Schlup v. Delo,* 513 U.S. 298, 330 (1995) ("The *Jackson* standard ... looks to whether there is sufficient evidence which, if credited, could support the conviction").

Washington state law is not dissimilar. In Washington, a claim of insufficiency admits the truth of the State's evidence and all inferences that can be reasonably drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980) (citing *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975). A reviewing court must defer to the trier of the fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004); *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The court need not be convinced of the defendant's guilt beyond a reasonable doubt; rather the court need determine only whether substantial evidence supports the jury verdict. *State v. Potts*, 93 Wn.App. 82, 86, 969 P.2d 494 (1998).

In dismissing Mr. Watson's sufficiency of the evidence claim, the Washington Court of Appeals held:

### B. Sufficiency – Assault

Lastly, Watson argues (1) that the evidence was insufficient to support the jury's verdicts finding him guilty of second degree assault and answering "yes" to both firearm special findings, (2) because the State undertook, and failed, to prove that he committed the assault as the principal, not an accomplice, and failed to prove that he, not an accomplice, was armed with a firearm during the commission of both Halligan's murder and Blaine's assault. [5]
…

### 3. Assault of Blaine with a Firearm

Although direct evidence does not explicitly identify Watson as Blaine's attacker, nonetheless, there is sufficient circumstantial evidence to support the jury's verdict that Watson assaulted Blaine, as either the principal or accomplice. First, Blaine testified that his attacker was about his same height (six feet one inch), dark-skinned, wore a black ski mask, and knocked him to the ground by hitting his head with a gun. Second, Blaine saw his attacker run into Halligan's bedroom, where Blaine saw another black man with corn rows wearing a black ski cap mask attacking Halligan.

Third, a day or two before the assault and Halligan's murder, Lockwood had overheard Watson discussing with Suggs a plan to go into Halligan's house with a gun, wearing ski masks, to steal Halligan's marijuana; both Suggs and Watson were wearing "corn row" braids at the time. From Lockwood's testimony, the jury could reasonably have inferred that Watson and another person carried out this plan by hitting Blaine with the gun and attacking Halligan.

Fourth, Watson denied to police knowing Halligan or having been in his home. But genetic material from the neoprene mask found in Halligan's kitchen yielded a mixed DNA profile found in only one out of every 20 million people. This profile was statistically significant and did not exclude Watson as a source of some of this DNA material.

### 4. Special Firearm findings

As we note above, *Teal*[1] similarly defeats Watson's argument that omission of express accomplice-alternative language from the special firearm verdict forms meant that the State undertook to prove that Watson possessed or used a firearm in both attacks, as opposed to aiding a different armed principal in the attacks. Moreover, RCW 9.94A.533(3) expressly provides a mandatory additional sentence where an offender *or his accomplice* was armed with a firearm in the commission of a felony. The trial court clearly instructed the jury that they could convict Watson of murder whether they found he was a principal or an accomplice; in addition, the trial court gave the jury a general accomplice instruction, which, under *Teal*, applied to the special firearm verdicts.

---

[1] Here, the Washington Court of Appeals refers to its conclusion that the trial court did not err when it did not instruct the jury that they could convict Watson of assaulting Blaine, while armed with a firearm, as either the principal or as an accomplice, when the trial court also gave the jury a general accomplice instruction. ECF No. 19, Exh. 2, pp. 12-13. Under *State v. Teal*, 152 Wn.2d 333, 96 P.3d 974 (2004), the Washington Supreme Court had previously held that a failure to include the language "the defendant or an accomplice" in a "to convict" instruction, does not create an additional element to the charged crime where accomplice liability is not an element of that crime. *Teal*, 152 Wn.2d at 226 n.3 (citing *State v., Haack,* 88 Wn. App. 423, 427, 958 P.2d 1001 (1997), *review denied,* 134 Wn.2d 1016 (1998)).

REPORT AND RECOMMENDATION - 24

1   For the reasons we note above with respect to the jury's assault verdict, we similarly find the evidence sufficient to support the jury's special firearm verdicts. It is uncontroverted that (1) Halligan was alive when Blaine saw him being attacked by the masked man with corn rows; (2) sometime after the attack, Halligan died of a gunshot wound to the chest; and (3) therefore, a firearm was used to kill Halligan. Regardless of whether the jury believed that Watson was the principal or the accomplice in Halligan's murder, they obviously included Watson's culpability in the use of the murder weapon, the firearm, regardless of this accomplice–principal dichotomy.

   The law is well settled and the jury was so instructed here that an accomplice is culpable as the principal. We hold that there was sufficient evidence to support the jury's finding Watson guilty of assaulting Blaine in the second degree and that both the assault and murder were committed while the perpetrator was armed with a firearm.

[5][Court's footnote]: Watson does not contest that there was sufficient evidence to support the jury's finding him guilty of first degree murder, either as Halligan's principal shooter or as another shooter's accomplice.

ECF No. 19, Exh. 2, pp. 15-17 (emphasis in original).

   In rejecting this claim in Mr. Watson's personal restraint petition, the Washington Court of Appeals stated:

   Watson also argues that insufficient evidence supports his convictions. He merely argues that his evidence, if the trier of fact believed it, would result in acquittal. That is not the standard for insufficient evidence. *See State v. Salinas,* 119 Wn.2d 192, 201 (1992). However, we decline to address the merits of this issue because Watson raised it on direct appeal and we rejected it on the merits. A personal restraint petitioner may not renew an issue that was raised and rejected on direct appeal unless he demonstrates that the interests of justice require relitigation of that issue. RCW 10.73.140; *In re Pres. Restraint of Taylor,* 105 Wn.2d 683, 688 (1986). Watson does not argue why the interests of justice require relitigation of this issue and, accordingly, he may not renew it.

ECF No. 19, Exh. 11, p. 4.

   As noted above, the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Viewing the record as a whole in the light most favorable to the prosecution, the undersigned

REPORT AND RECOMMENDATION - 25

concludes that the Washington Court of Appeals' decision was not contrary to or an objectively unreasonable application of clearly established law. There was sufficient circumstantial evidence that Mr. Watson assaulted Blaine, either as the principal or accomplice.

Essentially, Mr. Watson argues that the jury should have given more weight to his evidence – the denials by himself and Suggs – than the testimony of Lockwood. Counsel for Mr. Watson had ample opportunity to cross-examine Lockwood. Counsel questioned Lockwood about his relationship with Suggs and Watson, the circumstances surrounding the bus ride and conversation, inconsistencies in his testimony and report to the police, why he waited to go to the police with his information, possible motivating factors leading to his decision to go to the police, and his criminal history. ECF No. 19, Exh. 18 (Vol. VIII-B, pp. 328-351).

The jury also heard the testimony of Raymond Suggs, who testified that he has known Mr. Watson since the sixth grade, that he has never been on the bus with Brandon Lockwood and that he never discussed any type of home invasion robbery or criminal activity with Deshan Watson. ECF No. 19, Exh. 18 (Vol. X, pp. 674-675, p. 687). Mr. Watson testified that he has never met Brandon Lockwood, has never been on a bus with Suggs and Brandon at the same time and never planned any type of home invasion robbery of Halligan's house. ECF No. 19, Exh. 18 (Vol. X, p. 817). He testified that he had purchased marijuana from Halligan's house in the past. *Id.*, p. 818. He also testified that he owned a face mask and black stocking cap similar to those entered as exhibits. *Id.*, pp. 819-820. He denied seeing Blaine prior to trial, shooting Halligan, "smacking" Blaine, pushing Blain back in his room, or putting a pillow over Blaine's head. *Id.*, p. 821.

Clearly established federal law mandates that this court give deference to the jury's belief as to the credibility of witnesses. Under *Jackson,* the assessment of the credibility of

witnesses is generally beyond the scope of review.  *Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995).  Lockwood testified that he had overheard Watson discussing with Suggs a plan to go into Halligan's house with a gun (to be supplied by Watson), wearing ski masks, to steal Halligan's marijuana, and that both were wearing "corn row" braids at the time.  From this evidence, the state court reasonably determined that "... the jury could reasonably have inferred that Watson and another person carried out this plan by hitting Blaine with the gun and attacking Halligan."  ECF No. 19, Exh. 2, p. 16.

The DNA evidence also provided circumstantial evidence of Mr. Watson's guilt.  The testimony of the State's DNA expert was summarized by the Washington Court of Appeals, as follows:

> The State's DNA expert testified that (1) genetic material from the black stocking cap found in Halligan's bedroom produced a mixed DNA (from more than one person) profile found in one out of every 690 persons, which was not "statistically insignificant"; (2) Watson's DNA did not exclude him as the source of some of this DNA material; (3) genetic material from the neoprene mask found in the kitchen yielded a mixed DNA profile found in only one out of every 20 million people, which was statistically significant; (4) Watson's DNA did not exclude him as the source of some of this DNA material.

ECF No. 19, Exh. 2, p. 16; *see also* ECF No. 19, Exh. 18, (Vol. IX-A, pp. 477-478).  The record reflects that the state's DNA expert further explained that the chance of Mr. Watson being included in the test sample from the neoprene mask was one in twenty million – this meant that in the entire United States (with a population of about two hundred and eighty million), there would only be about fourteen people who would share that DNA profile and Defendant Watson was one of them.  *Id.*, Exh. 18 (Vol. IX-A, p. 479).

Mr. Watson's DNA expert disputed the profile, stating that it would be found in one out of every two million (not 20 million) people.  However, the expert did not dispute that Mr.

Watson's DNA included him as a possible donor of some of the genetic material on the neoprene ski mask. ECF No. 19, Exh. 2, p. 6; ECF No. 19, Exh. 18 (Vol. X, pp. 739-740):

> So this is the problem I have. It's an interpretational one. I don't want you – to be misleading and have you think that I'm trying to change the results and say that Deshan Watson is not included in that result, it doesn't change that conclusion.
>
> What it does do is includes, adds a couple of more peaks to the mix for the statistical calculations that Will Dean performed, and by doing that, we bring the one in twenty million figure down to one in two million. … And this -- this adds at least one more, and by adding one more, one or two more, it can bring the frequency down about tenfold. But, again, Deshan Watson is still included. Adding in this one peak does not take him out of the mix. I want you to understand that.

ECF No. 19, Exh. 18 (Vol. pp. 739-741.

Thus, it was not unreasonable for the Washington Court of Appeals to conclude that this "statistically significant" profile, which did not exclude Watson as the source of some of the DNA material, added to the "sufficient circumstantial evidence to support the jury's verdict that Watson assaulted Blaine." ECF No. 19, Exh. 2, p. 15.

The Washington Court of Appeals noted that the same evidence that supported the jury's assault verdict was sufficient to support the jury's special firearm verdicts:

> For the reasons we note above with respect to the jury's assault verdict, we similarly find the evidence sufficient to support the jury's special firearm verdicts. It is uncontroverted that (1) Halligan was alive when Blaine saw him being attacked by the masked man with corn rows; (2) sometime after the attack, Halligan died of a gunshot wound to the chest; and (3) therefore, a firearm was used to kill Halligan. Regardless of whether the jury believed that Watson was the principal or the accomplice in Halligan's murder, they obviously included Watson's culpability in the use of the murder weapon, the firearm, regardless of this accomplice–principal dichotomy.
>
> The law is well settled and the jury was so instructed here that an accomplice is culpable as the principal. We hold that there was sufficient evidence to support the jury's finding Watson guilty of assaulting Blaine in the second degree and that

REPORT AND RECOMMENDATION - 28

both the assault and murder were committed while the perpetrator was armed with a firearm.

ECF No. 19, Exh. 2, p. 17.

The decisions of the Washington court with regard to Mr. Watsons' insufficiency of the evidence claim was not contrary to nor an unreasonable application of United States Supreme Court precedent. Accordingly, Mr. Watson is not entitled to habeas relief on this claim and the undersigned recommends that his second habeas claim be denied and dismissed with prejudice.

**C.     Fourth Habeas Claim – Cumulative Error**

In his fourth habeas claim, Mr. Watson asserts that cumulative error deprived him of due process of law and a fundamentally fair trial. ECF No. 7, p. 11. Mr. Watson failed to fully and fairly exhaust this claim because he did not present the claim as a federal constitutional claim to the Washington appellate courts. Mr. Watson has filed a motion to stay this habeas proceeding while he returns to state court to exhaust this issue. ECF No. 21. However, as explained more fully below, Mr. Watson is now procedurally barred from raising this claim in state court. Thus, the claim must be dismissed.

Section 2254(b)(1) provides that a habeas petition must be denied if the petitioner failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

A petitioner must exhaust state remedies before seeking a federal writ of habeas corpus. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The petitioner must give the state court a fair opportunity to correct the alleged violation of federal rights. *Duncan*, 513 U.S. at 365. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary

REPORT AND RECOMMENDATION - 29

review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29. The petitioner must "fairly" present the claim to the state's highest court so as to give the state court a fair opportunity to apply federal law to the facts. *Picard*, 404 U.S. at 276-78; *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The petitioner bears the burden to prove that a claim is properly exhausted. *Lambrix v. Singletary*, 520 U.S. 518, 523-24 (1997).

Petitioners must alert state courts "to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365-66. "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Vague references to broad constitutional principles such as due process, equal protection, or the right to a fair trial are not sufficient. *Id.*; *Johnson v. Zenon*, 88 F.3d 828, 830-31 (9th Cir. 1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106-07 (9th Cir. 1999); *Peterson v. Lampert*, 319 F.3d 1153 (9th Cir. 2003) (en banc). Presenting a state law claim does not fairly present a federal claim to the state courts, even if the legal theory underlying the state law claim is the "same" or "similar" to a claim under federal law. *Duncan*, 513 U.S. at 365-66; *Hiivala*, 195 F.3d at 1106-07; *Casey v. Moore,* 386 F.3d 896, 911-14 (9th Cir. 2004).

State courts are not required to comb the record in order to discover the federal nature of the prisoner's claim; the federal claim must be contained within the four corners of the prisoner's state court brief or petition. *Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004). Additionally, both federal and state briefing rules forbid the practice of incorporation by reference. *See* Fed. R. App. P. 28-1(b); *Kibler v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000); *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 949 P.2d 370, 375 n.4 (1998) (Supreme Court will not review incorporated arguments from Court of Appeals briefing). The prisoner cannot simply

provide the state court with conclusory, scattershot citations to federal constitutional provisions without relating them to his federal claim. "Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 370 F.3d 882, 890 (9th Cir. 2004).

In his declaration filed in support of his motion to stay, Mr. Watson states that he raised the issue of cumulative error in both his direct appeal and personal restraint petition, but acknowledges that his claim is not exhausted because he failed to raise the issue in the Washington Supreme Court. ECF No. 21-1, pp. 1-2. In his direct appeal, Mr. Watson claimed that the cumulative effect of the errors at trial denied him a fair trial under both the Washington and federal constitutions. ECF No. 19, Exh. 3, pp. 35-36. He did not raise the issue in his Petition for Review to the Washington Supreme Court. *Id.*, Exh. 5. In his Personal Restraint Petition, Mr. Watson raised the issue in an unnumbered paragraph, and cited to both state and federal law in support. ECF No. 19, Exh. 8, p. 48. He did not raise the issue in his motion for discretionary review in the Washington Supreme Court.

As noted above, a petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971), *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir.), *cert. denied*, 478 U.S. 1021 (1986). Mr. Watson's claim of cumulative error was never presented to the Washington Supreme Court and therefore, he has failed to properly exhaust this claim. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. at 842 ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

REPORT AND RECOMMENDATION - 31

In addition, because of the state statute of limitations and the state rule prohibiting

successive petitions, Mr. Watson is now procedurally barred from exhausting his federal claims

in state court. *See* RCW 10.73.090, RCW 10.73.140 and RAP 16.4(d).

### (1) Procedural Bar

If a petitioner fails to obey state procedural rules, the state court may decline review of a

claim based on that procedural default. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). If

the state court clearly and expressly states that its judgment rests on a state procedural bar, the

petitioner is barred from asserting the same claim in a habeas proceeding. *Harris v. Reed*, 489

U.S. 255, 263 (1989); *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993); *Shumway v. Payne*,

223 F.3d 982 (9th Cir. 2000). A claim is also barred, despite the absence of a "plain statement"

by the state court, where the petitioner failed to present the claim to the state court, and the state

courts would now find the claim to be barred under state law if the petitioner attempted to now

exhaust the claim. *Coleman*, 501 U.S. at 735 n.1; *Noltie*, 9 F.3d at 805.

Under Washington law, a defendant may not collaterally challenge a conviction more

than one year after the conviction becomes final. RCW 10.73.090(1). Mr. Watson's conviction

became final for purposes of state law, one year after the Mandate was filed on December 12,

2007. ECF No. 19, Exh. 7; RCW 10.73.090(3)(b). Because more than one year has passed since

his conviction became final, his claims are now time-barred in state court. In addition, pursuant

to RCW 10.73.140, the Washington Court of Appeals will not consider the issue if the petitioner

has previously raised the same ground for review in a previous personal restraint petition:

> If a person has previously filed a petition for personal restraint, the court of
> appeals *will not consider the petition unless the person certifies that he or she has
> not filed a previous petition on similar grounds*, and shows good cause why the
> petitioner did not raise the new grounds in the previous petition . . . . If upon
> review, the court of appeals finds that the petitioner has previously raised the

same grounds for review, or that the petitioner has failed to show good cause why the ground was not raised earlier, the court of appeals shall dismiss the petition.

RCW 10.73.140 (emphasis added).

Mr. Watson previously filed a personal restraint petition raising the cumulative error claim presented in this habeas corpus petition. Therefore, he is now procedurally barred from presenting an identical cumulative error claim in a future personal restraint petition absent good cause. Because his claims are procedurally barred under Washington law, the claims are not cognizable in a federal habeas corpus petition absent a showing of cause and prejudice or actual innocence.

### (2)   Cause and Prejudice or Actual Innocence

Unless it would result in a "fundamental miscarriage of justice", a petitioner who procedurally defaults may receive review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. *Coleman v. Thompson*, 501 U.S. at 750. The petitioner must show an objective factor actually caused the failure to properly exhaust a claim. "The fact that [a petitioner] did not present an available claim or that he chose to pursue other claims does not establish cause." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996). Interference by state officials, the unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance of counsel may constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, allegations of ineffective assistance of counsel in post-conviction collateral proceedings do not excuse a procedural default. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987); *Ortiz v. Stewart*, 149 F.3d 923 (9th Cir. 1998); *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998); *Gallego v. McDaniel*, 124 F.3d 1065, 1078 (9th Cir. 1997); *Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir.

1996); *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996). Even a petitioner's own inadequacies do not excuse a procedural default. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 907-09 (9th Cir. 1986); *Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991). In order for an allegation to constitute cause to excuse a procedural default, the petitioner must exhaust the allegation in state court. *Edwards v. Carpenter*, 529 U.S. 446, 450-53 (2000); *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996).

Mr. Watson fails to show cause and prejudice. Although he raised his cumulative error claim in the Washington Court of Appeals he chose not to do so in the Washington Supreme Court. His decision to do so does not demonstrate cause to excuse his procedural default.

There has also been no showing of actual innocence to excuse the procedural default. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To meet this manifest injustice exception, [the petitioner] must demonstrate more than that 'a reasonable doubt exists in the light of the new evidence.'" *Wood*, 130 F.3d at 379 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. The exception is narrow in scope, and is reserved for the extraordinary case. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992)); *see also Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996). "[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup*, 513 U.S. at 324.

REPORT AND RECOMMENDATION - 34

"[I]n virtually every case, the allegation of actual innocence has been summarily rejected."
*Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324).

In addition, a claim of cumulative error is based on the fact that other claims are erroneous.  As discussed above, Mr. Watson has no other meritorious claims.  Therefore, a claim of cumulative error does not merit relief.

Mr. Watson did not properly exhaust his fourth federal habeas claim, and the claim is now procedurally barred under an independent and adequate state law.   The claim is not cognizable in federal court and should, therefore, be dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Under this standard and based on a thorough review of the record and analysis of the law in this case, this Court concludes that Mr. Watson is not entitled to a certificate of appealability with respect to this petition.

## CONCUSION

Based on the foregoing discussion, the undersigned recommends that Mr. Watson's habeas petition be **denied**, and this action **dismissed with prejudice**.  Mr. Watson's Motion to

REPORT AND RECOMMENDATION - 35

stay (ECF No. 21) should also be **denied** as his claim of cumulative error is unexhausted and procedurally barred.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).    Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 15, 2011**, as noted in the caption.

**DATED** this 20th day of June, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 36